*571 PETITION FOR A REHEARING BY
P. H. DARBY. ESQ.
With due respect for the opinion of the court delivered in this cause, after a careful and candid examination of its reasoning and principles, the counsel for the plaintiff, differing still with this court, in its application of legal authority to the facts of the case, respectfully move the court for a re hearing of the cause. And the counsel for the plaintiffs have the more solicitude on this subject, because the principle settled by the case, is of great legal magnitude, and if it is to stand, would, on a rehearing, have the benefit of a full court.
It is admit-ed by the derision, that the title of Caldwell’s heirs is now complete to the lot in question. if. is also admitted that White has had an undisturbed possession of the property ever since the year 1813. And Capt. Weisiger proves that the house is a “frame,” and “greatly impaired by time.” And if there is any case where a court of chancery will execute a contract after the party has selected bin remedy at law, with due respect for the opinion delivered, the counsel believe that this case comes within the rule. White has had all that he contracted to have. He has had the use and occupation of the house and lot ever since the contract was made between himself and Caldwell. He has been delayed only in the title. And the only reason given in the opinion delivered, for not decreeing a specific execution of the contract is, because he permitted Sebree to rescind a contract, which, by his own answer and cross bill, he shews he might have executed; and Sebree asked, in his hill, for the title, and only for a rescission if the title could not be made.
It is said however, that White was “not bound” to perfect the title and enforce his contract with Sebree, by bringing proper parties before the court. That is admitted. But what aman can do, hut is not hound to do, and does not do, is a matter of his own will and pleasure to leave undone; and at least, ought not to prejudice others by his choice. Put the case of Sebree against White out of the question. (as the court in fact has done,) and there is no evidence of hardship on the part of White, nor *572 any if it is retained till all the parties are present. The record of that suit is not exhibited in White's answer to the injunction bill of Long and Caldwell’s neither is it filed as evidence in that ease. And the court can not fake notice of it as evidence, without, its being made so by the party himself. Properly, therefore, from the view the court has taken of the case, the cross hill of White against Sebree, in which the heirs of Ratcliffe and of Caldwell are made parties, with the answer of Caldwell’s heirs, and their cross bill against Long and White, and their answers to that cross bill, ought to he dismissed without, prejuduc to the parties, in the other suit of Long anti Caldwell’s heirs against White. The cause would then come on, on that bill with White’s and Ratcliffe’s answers, and the proof in the cause, unconnected with Sebree’s suit, or decree and unaffected by it. If Caldwell’s heirs were no parties to that suit, as the court seems to consider, they ought not to be prejudiced by it, when it is not exhibited, or made evidence in their suit. They can not he made parties to it for the purpose of using it as evidence against them, and denied to be parties to it, to get clear of White’s demand of a title from them. This would be blowing hot for one party, and cold fur the other, which the court will not do. If they are parties, they offer, and are acknowledgedly ready to comply with the prayer of White’s bill And if they are not parties, they can not be prejudiced by a record to which they are not parties, and which is neither exhibited nor filed as evidence against them. And stripping the record of Long and Caldwell’s heir against White, of the suit of Scorer against White, let us consider how the parties stand in the former suit, when we have stripped our minds of the knowledge and influence of the latter.
Caldwell sold to White in 1813, and put him in possession. That possession ho has enjoyed quietly and uninterruptedly ever since, in 1822, White instituted suit on his bond, for title, against Long, who was security. Pending the .suit, and before judgment, Long and Caldwell’s heirs file their bill, and obtain an injunction. In contempt of the au *573 thority of the court, White proceeds to judgment against Long, and by a contract with Long, to execution and sale of his property. This he ought not to have done to the prejudice of Caldwell’s heirs, until the suit was disposed of, and for every purpose of this suit, stands as if not done. They would certainly beset aside on motion to the circuit court, was it not for the agreement with Long. Caldwell’s heirs are then resisting the suit on While’s bond, and lifering him a title acknowledgedly good. Why is it that he is not compelled to take it? Care this court restore Caldwell’s heirs to their property? They have been fourteen years out of possession; and the property "greatly impaired by him .” Their ancestor is dead They are infant and have not the management of their estates. Why then shall a decree so injurious to them, and ruinous to their interests and estates be made? if ought; not to be done, unless the rules of law and principles of equity call for it, and say “it must be so, because so is the law.” But when was such a contract with parties and property so situated, refused a specific execution? There is not a case of the kind in the books, since chancery has assumed the power of specific execution. The rule, therefore, which the court has laid down, must he taken as a new rule, and amounts in effect to a denial of the power of specific execution in the court, where the party has elected to- take his remedy at law, or by confounding the. two causes together, and collecting evidence from the one, on which to decide the other; the court has used that as evidence which is not evidence in the case, and raised a hardship for White from the argument of counsel, and the confusion of papers, which is not proved by him to exist.
Had the chancellors originally laid down the rule to be, that no application could successfully be made fora specific execution of a contract from part performance, and change of property by the possessor, where the contract had not been strictly complied with on the part of those who sought its execution; but leave such persons to their remedy at law, the counsel would not be prepared to say that the rule *574 was wrong. But it is deemed too late to investigate theories where long and well established practice has prevailed on the same subject But it would better, even now, to no settle the law of the court of chancery, than to have the application uuncertain, precarious and capricious. In such cases the will of the judge is the law of the land, and the property of nun no longer depends on settled precedents of adjudicated eases, forming for the court a rule and foe i he bar a guide, and going to law is a matter of chancery indeed; for no person can give a rational gurus of what will be the result of a suit, until he bears the decision.
In the present case. White has proved nothing, either by record or by deposition. He has admitted the contract and the possession under if and says himself in his answer, that “it is not, now worth as many hundreds, as he was to give thousands for if.” If such is the case, and both parties agree ill saying so, in whose possession has it become reduced? in the possession of White. So say the proof, and so adjudges the court. And is Caldwell’s heirs to take back this dilapidated estate-, and pay its then value for it? or ought he to suffer the loses, who has permitted the property to despoil in his hands.
But on what principle do the court adjudge that Caldwell’s heirs are no parties to Sebree’s bill, where they are made defendants by White’s cross bib? If is on the grounds that no steps were taken by White to bring them into court: and that Sebrep Was out of court, and his suit finally ended.
With due respect for the opinion, both these grounds are founded on a mistake, of the facts, as represented on the record. White and Castleman filed their answer at March term 1821, and exhibited Caldwell’s bond, made their answer a cross bill, and the heir of Caldwell defendants, with the heirs of Ratcliffe.
At July term 1822, the complainant Sebree, caused a guardian to be appointed to Ratcliffe’s heirs. And at the same term, submitted the case for a dec *575 ree, and an interlocutory decree was rendered. At October, 1322, the commissioner filed his report and a final decree was rendered as to Sebree; but the cause stood over as to the other Gill, &c. And at October term 1823, when they submitted the, cause on their cross bill against White for a decree, and a decree was rendered in their favor at January term 1821, for $294 interest, with their note of $700
At this term the defendants, White and Castleman, moved the court to set aside this decree, and their motion is continued until the 6th day of the next term, and does not yet appear to be determined, from the record.
At March term 1821, the “plaintiffs” moved the court to appoint F. P. Blair guardian ad litem. to Caldwell’s heirs; and an order of publication was taken against them. These “plaintiffs” must have been White and Castleman on their cross bill, because Sebree and Marshall was out of court. So that there were steps taken by them to bring Caldwell’s heirs into court. And at July term 1825, they appeared and answered. And had White and Castleman resisted the decree of Sebree and Marshall, and Gill, &c. until the heirs of Caldwell were before, the court, the title would have, been complete, and the prayer of Sebree end Marshall’s bill, and White’s and Castleman’s cross bill, would have been complied with, and all the, contracts completed. And it was wholly irregular and erroneous to take up the case as it was, without the proper parties before the court; and all these, decrees ought to be reversed, as being taken against the settled practice of the courts of chancery; and the causes ordered to be- seperated, and a new decree, rendered according to the prayers of the bills and cross bills, and the present state of the parties. Or if board together, as arising out of the same matter, a general decree ought to be rendered according to the prayers of the bills and the present parties.
At present we see White in both courts from 1822 to 1824, pursuing his title against Caldwell’s and Ratcliffe’s heirs, in one suit in chancery, and pur *576 suing bis claim at law against Long, in disobey. once to the injunction of Long and Caldwell’s heirs and in contempt of the authority of the court, asking his title in one suit and refusing it in another And yet Caldwell’s heirs are told that they have no right to complain of his contempt and wrongs, while their estate and themselves are made the entire sufferers; and ordered to take property worth §2000 in 1813, that is stated by White and Sebree, not to be, at this time, worth §200.
Recital.
History of the cause in the circuit court.
For these reasons, the counsel for Caldwell’s heirs believe, that the justice and equity of the case has not been attained by the opinion delivered, and move for a re, hearing of the cause, with a view that the justice of the cause may be done.
I will here refer to the case lately decided by this court, at the present term, of Hendrick against Cook’s executors, as a case stronger than this case, in its facts of injury by loss of a sale of the property, and injury by time.